TULARE INDEPENDENT SCHOOL DISTRICT NO. 36, Appellant, v. CRANDON SCHOOL DISTRICT NO. 17, Respondent.

(199 N. W. 451.)

(File No. 5524. Opinion filed June 14, 1924.)

1. **Statutes—Statutory Construction—All Parts Harmonized in Construing Statutes.**

Courts, in construing statutes, should make all the parts of the statutes harmonize, if practicable, and give a sensible and intelligent effect to each.

2. **Statutes—Attorney General—Practical Construction by Attorneys General May Be Considered.**

In construing ambiguous statutes, the practical construction given it by Attorneys General may be considered.

3. **Schools and School Districts—Education—Petitions—Petition for Exclusion of Territory, Signed by Majority of Electors Therein, Held Sufficient.**

Under Rev. Code 1919, Sec. 7536, providing for exclusion of territory from school district, petition signed by majority of electors of territory sought to be excluded from district is sufficient, in view of Laws 1923, c. 177.

Appeal from Circuit Court, Spink County; Hon. Alva E. Taylor, Judge.

Proceeding for exclusion of certain territory from the Tulare Independent School District No. 36 and for attachment thereof to Crandon School District No. 17. Action of the committee granting petition was affirmed by the circuit court, and from the judgment and an order denying a new trial, the Tulare Independent School District No. 36 appeals. Affirmed.

*W. F. Bruell,* of Redfield, for Appellant.

*W. H. Beckman,* of Redfield, for Respondent.

Appellant cited: Dartmouth Sav. Bank v. School District, 43 N. W. 822; Boone v. People, 4 Ill. App. 231; Pass v. Miller, 146 Ill. 596; People v. Allen, 49 N. E. 350; Sayer v. Thompkins, 23 Mo. 443; Stephens v. School District No. 85, 148 S. W. 504; Bourland v. Snyder, 79 S. E. 568; State v. Graham, 108 N. E. 111; Whitney v. State, 47 S. W. 293; Burnham v. Claiborne, 32 So. 87; State v. Denny, 72 S. W. 467; In re Wolf, 8 Kulp (Pa.) 181.

GATES, J.    Tulare civil township consists of congressional township 115 north, of range 64 west 5th P. M., in Spink county. In May, 1922, Tulare independent school district 36 embraced Tulare township.    Therein were two schoolhouses, one on the southwest quarter of section 11, and one in the town of Tulare, situated on the southeast quarter of section 27.    Prior to 1907 the north half and the south half of the township were separate school districts, but by a petition, pursuant to section 70, c. 135, Laws 1907 (now section 7445, Rev. Code 1919), the districts were in 1908 consolidated, against the unanimous protest of the electors of the northern district.    In May, 1922, a petition was presented to the county superintendent, asking that sections 1, 2, 3, 4, 10, 11, 12, 13, 14, and the north half of section 9 be excluded from Tulare independent school district and attached to Crandon school district.    Proceedings were had pursuant to the provisions of section 7536, Rev. Code 1919, and such territory was excluded from the Tulare district and attached to the Crandon district.  · Upon appeal such action was affirmed by the circuit court.    From the judgment, and an order denying new trial, the Tulare district appeals.

While some contention is made as to an erroneous division of property, we think nothing is deserving of serious consideration, except the question of the jurisdiction of the county superintendent and of the committee to act upon the petition.    If the petition contained the requisite number of signers, there was jurisdiction; if it did not, there was not.    The portion of said section 7536 material to our consideration is as follows:

"Territory adjacent to any independent district may be included therein, and territory within any independent district may be taken therefrom, and included in any adjacent district, in the following manner:

"1.   Application by written petition for such change must be made by a majority of the resident electors desiring to have territory included or excluded from any independent district.

"2.   Upon receipt of such petition the county superintendent shall call a committee to decide upon granting or refusing the petition, such committee consisting of himself, the president of the board of education of such independent district, and the chairman of the district board.

"3.   The committee shall consider the interests of the cor-

porations concerned, the convenience of the petitioners and the permanent school interest. and if they deem it proper, shall grant the petition and issue an order authorizing the inclusion of such territory in the independent district or school districts to which it is adjacent."

The petition was signed by a majority of the resident electors of the territory sought to be excluded, but not by a majority of the resident electors of Tulare independent district. It is the contention of appellant that a petition signed by a majority of the electors of the Tulare district was requisite.

The clause "majority of the resident electors desiring" is vague and ambiguous. The word "resident" has no useful purpose in the clause, unless it imports electors resident of the territory to be included or excluded. The word "desiring" injects an uncertain element in the clause. It is to be expected that those "desiring" the change will sign the petition. There is no method pointed out for determining the number of those "desiring," except from the petition. Under a literal interpretation, those electors who do not desire the change are given no consideration, in so far as the requisites of the petition are concerned. It would therefore seem that under a literal interpretation a petition signed by any number of petitioners, however, small, would vest the county superintendent with power to act on the petition. Therefore, unless the words "resident electors" are to be taken as the equivalent of "electors of the territory proposed to be detached," a literal interpretation of the clause renders it meaningless for all practical purposes. On the other hand, the statute does not specifically require that the petition shall be signed by a majority of the electors of the district or districts affected. This is a requirement that is contained in other sections of the school law. As an illustration, the words "electors of each district affected," in section 7571, Rev. Code 1919, were construed to mean the electors of the entire district out of which it was proposed to carve another district, and not to mean the electors of the proposed district. State ex rel. Ice v. Welch, 46 S. D. 14, 190 N. W. 77.

The legislative history of paragraph 1 of said section 7536 is interesting. In section 122, c. 47, Laws 1887, incorporated into Comp. L. 1887 as section 1810, the clause was, "majority of the electors of such adjacent territory." In section 4, subc. 9, c. 56, Laws 1891, it was changed to read, "three-fourths of the electors

of such adjacent territory." In section 4, subc. 10, c. 57, Laws 1897, the wording of the act of 1887 was restored. In chapter 78, Laws 1899, such language was re-enacted. In section 4, subc. 11, c. 113, Laws 1901, it was changed to read substantially as at present, viz., "majority of the resident electors desiring to have territory attached to or detached from." While the statute stood thus, Attorney General Hall gave the following opinion thereon:

"Should you now or at a later date wish to attach adjacent territory, you will do so under the provisions of section 4 by written petition of a majority of the resident electors of the territory proposed to be attached, and the order of the committee as provided in said section." Atty. Gen. Op. 1904, p. 69.

That provision was carried into section 2410, Rev. Pol. Code 1903, but in chapter 133, Laws 1903, it was changed to read, "majority of the resident electors of territory proposed to be attached or detached from." In section 176, c. 135, Laws 1907, the language of said section 2410 was restored, and such has since been the statute by its substantial re-enactment by said section 7536, Rev. Code 1919.

In 1913 the superintendent of public instruction inquired of Attorney General Johnson as to the proper interpretation of this clause. He held as follows:

"This construction is sustained by the language of the third subdivision of this section, which is as follows: 'The committee shall consider the interests of the two corporations concerned, the convenience of the petitioners and the permanent school interests.' * * * It will be noted from this provision that the committee shall consider 'the convenience of the petitioners.' This language can imply nothing else than that such petitioners are to consist of resident electors of the adjacent territory, the convenience of which residents only can be affected by attaching such territory. The word 'convenience' does not refer to the financial interests of the independent districts, which are the chief interests of such district affected by the attaching of adjacent territory, as those interests are included in the word 'the interests of the two corporations concerned,' nor does the word 'convenience' refer to the capacity of the public schools in the independent district, as that matter is included in the words 'the permanent school interests.' Consistent with the foregoing, therefore, it is my opinion that the

petitioners required by this statute are a majority of the resident electors of the adjacent territory desiring to have such territory attached." Atty. Gen. Op. 1914, p. 284.

[1-3] In view of the impossibility of giving reasonable meaning to the clause by a literal interpretation; in view of the absence of language indicating a legislative intent that a majority of the electors of the entire district was contemplated; in view of the duty of courts in construing statutes "to make all its parts harmonize, if practicable, and give a sensible and intelligent effect to each" (Quebec Bank v. Carroll, 1 S. D. 1, 44 N. W. 723); in view of the practical construction of this clause by Attorneys General Hall and Johnson (Jordan v. Mellette County, 38 S. D. 299, 161 N. W. 279); and in consideration of the explicit rule for the future contained in chapter 177, Laws 1923—we are of the opinion that the petition signed by a majority of the electors of the territory sought to be detached conferred jurisdiction upon the county superintendent and the committee to act upon the petition.

The judgment and order appealed from are affirmed.

Note.—Reported in 199 N. W. 451. See, Headnote (1), American Key-Numbered Digest, Statutes, Key-No. 205, 36 Cyc. 1129; (2) Statutes, Key-No. 219, 36 Cyc. 1140; (3) Schools and school districts, Key-No. 37(3), 35 Cyc. 840.