In the Matter of The Application of
FARMERS STATE BANK OF VI-
BORG, South Dakota to Establish a
Branch Bank in Beresford, South Da-
kota.

No. 17092.

Supreme Court of South Dakota.

Considered on Briefs Nov. 27, 1990.

Decided Feb. 6, 1991.

Bradley C. Grossenburg and David C. Kroon, Woods, Fuller, Shultz & Smith, P.C., Sioux Falls, for contestant and appellant.

Steven W. Sanford, Cadwell, Sanford & Seibert, Sioux Falls, for applicant and appellee.

WUEST, Justice.

First Savings Bank of Beresford, South Dakota appeals a judgment of the circuit court which affirmed the decision of the South Dakota Banking Commission to approve the application of Farmers State Bank of Viborg, South Dakota to establish a branch bank in Beresford. We affirm.

On or about January 27, 1989, Farmers State Bank of Viborg, South Dakota filed an application with the South Dakota Banking Commission (Banking Commission) to establish a branch bank in Beresford,

South Dakota. Beresford is a farming community with a population of approximately 1600 people. Following notice by the Banking Commission, a hearing was held for the purpose of receiving evidence with regard to the application. First Savings Bank of Beresford, among others,[1] intervened in opposition to the application. First Savings Bank is a federal savings bank chartered under the provisions of 12 U.S.C. § 1464. Following the hearing, the Banking Commission approved the application of Farmers State Bank to establish a branch bank in Beresford. First Savings Bank appealed and the circuit court affirmed the Banking Commission's determination. First Savings Bank appeals to this court and raises four issues:

I. Whether First Savings Bank is an existing national bank regularly transacting business within the meaning of SDCL § 51–20–4;

II. Whether Farmers State Bank demonstrated with substantial evidence the need for a branch bank in Beresford;

III. Whether the Banking Commission erred in denying First Savings Bank's motion for continuance of the hearing to admit rebuttal and supplemental evidence; and,

IV. Whether the Director of the Banking Commission investigated Farmers State Bank's application pursuant to SDCL § 51–17–15.

We address these issues seriatim, noting additional facts where necessary.

### I.

■ SDCL 51–20–4 [2] prohibits the establishment of a branch bank in small communities where a national or state bank is already present. SDCL 51–20–4 provides:

Branch banks may be established by a bank consolidating or merging with or purchasing the assets of another bank. *No branch bank shall be established in*

1. Beresford Bancorporation, Inc., a majority owner of First Savings Bank, and Performance Bankers, Inc., a consultant to First Savings Bank also intervened. The President of First Federal Savings and Loan of Beresford also testified at the administrative hearing on the application.

2. Transferred to SDCL 51A–7–4 (1990).

*a municipality of less than three thousand population where there is an existing national or state bank regularly transacting banking business,* or in any municipality of three thousand population or more and less than ten thousand population where there are two or more existing national or state banks regularly transacting banking business; provided, that a branch bank shall be allowed in such a municipality when an outside bank establishes a branch by purchasing the assets of, or by merger or consolidation with, one of the existing banks. (Emphasis added).

It is undisputed that the municipality of Beresford has a population of less than 3,000 individuals. Thus, we are presented with the issue whether First Savings Bank is a "national" bank within the meaning of SDCL 51–20–4.

The Banking Commission concluded as a matter of law that First Savings Bank was not a national bank and the circuit court affirmed. We review this determination *de novo* as a question of law. SDCL 1–26–36; *Karras v. State, Dept. of Revenue,* 441 N.W.2d 678, 679 (S.D.1989); *Permann v. South Dakota Dept. of Labor, Unemployment Insurance Division,* 411 N.W.2d 113, 115–17 (S.D.1987).

First Savings Bank is a federal savings bank chartered under the amended Home Owners' Loan Act of 1933, 12 U.S.C. § 1461 et seq. First Savings Bank argues the term "national" in SDCL 51–20–4 refers to the government entity which charters a bank (i.e., federal as opposed to state), not the specific act under which a bank is chartered. Thus, because First Savings Bank is chartered by the federal government, it is a "national" bank for purposes of SDCL 51–20–4. Farmers State Bank argues, and both the Banking Commission and circuit court concluded, that "national" refers to the act under which a bank is charted; specifically, the National Bank Act, 12 U.S.C. § 21 et seq.

■■■■ Recent amendments to Title 51 Banks and Banking are a clear indication of the legislature's intention as to this issue. Under the amended Title the term "national bank" is defined as: "any corporation organized pursuant to 12 U.S.C. § 21, as amended as of January 1, 1990." SDCL 51–15–1(16).[3] SDCL 51–20–4 has been amended and includes the term "national bank":

> Branch banks may be established by a bank consolidating or merging with or purchasing the assets of another state bank, *national bank* or savings and loan association organized pursuant to Title 52 or 12 U.S.C. § 1464, as amended as of January 1, 1990. No branch bank may be established in a municipality of less than three thousand population where there is an existing *national* or state bank regularly transacting banking business, or in any municipality of three thousand population or more and less than ten thousand population where there are two or more existing *national* or state banks regularly transacting banking business. However, a branch bank shall be allowed in such a municipality if an outside state or *national bank* establishes a branch by purchasing the assets of, or by merger or consolidation with, one of the existing state banks, *national banks* or savings and loan associations organized pursuant to Title 52 or 12 U.S.C. § 1464, as amended as of January 1, 1990. (Emphasis added).

We may consider the subsequent amendment of a statute in gleaning the legislative intendment of the law. *Hot Springs Indep. School Dist. No. 10 v. Fall River Land Owners Assoc,* 262 N.W.2d 33 (S.D. 1978). *See Karlen v. Janklow,* 339 N.W.2d 322 (S.D.1983). When considering a subsequent amendment, we must decide whether the purpose of the amendment was to clarify or alter the law. *Hot Springs,* 262 N.W.2d at 39. If the amendment was intended to clarify the law, we may look to it in order to determine rights under the original act. *Olson v. Pulaski Common School Dist.,* 92 N.W.2d 678, 680 (S.D. 1958). In making this determination, we consider the time and circumstances sur-

---

**3.** Transferred to SDCL 51A–1–2(12) (1990).

161 N.W.2d at 115–17.

rounding the enactment of the amendment. *Id.*

First Savings Bank acknowledges in its brief the enactment of SDCL 51–15–1(16) defining "national bank" was probably in response to this litigation. We agree, and also find the amendment of SDCL 51–20–4 a relevant circumstance in gleaning legislative intent with respect to branch banking limitations. When the legislature amended SDCL 51–20–4 they specified with greater detail that branch banks may be established by consolidating or merging with another "state bank, national bank or savings and loan association organized pursuant to Title 52 or 12 U.S.C. § 1464, as amended as of January 1, 1990." However, with respect to establishing branch banks in municipalities with less than 3,000 population, the legislature did not specify savings and loan associations organized pursuant to Title 52 or 12 U.S.C. § 1464. Rather, no branch bank may be established where there is an existing national or state bank. Had the legislature intended this restriction to include banks chartered under Title 52 or 12 U.S.C. § 1464, they would have so provided. As previously mentioned, First Savings Bank is charted under 12 U.S.C. § 1464.

We believe the purpose for these amendments was to clarify SDCL 51–20–4, and thus we may consider them in determining the rights under existing law. Under our analysis, we hold that "national" in SDCL 51–20–4 refers to the act under which a bank is chartered. Therefore, Farmers State Bank was not prohibited from establishing a branch operation in Beresford. We affirm the circuit court on this issue.

## II.

■ In Finding of Fact XIX, the Banking Commission found adequate evidence of need for an additional financial institution in Beresford. First Savings Bank takes issue with this finding and we review the record to determine whether the agency's finding of fact is clearly erroneous in light of all the evidence in the record. SDCL 1–26–36; *Karras,* 441 N.W.2d at 679; *Sharp v. Sharp,* 422 N.W.2d 443, 447 (S.D.1988) (Morgan, J., concurring specially; Henderson, J., dissenting); *Permann,* 411 N.W.2d at 115–17.

There is ample evidence in the record to support the Commission's finding of need for a new banking institution in Beresford. The economy of Beresford is based upon agriculture and agri-business. The present Beresford banking institutions maintain low loan-to-deposit ratios and a low agricultural loan volume. Indeed, the charters of the present Beresford banking institutions place significant limits upon agricultural and commercial lending.[4] Consequently, a significant proportion of agricultural lending to Beresford-area farmers is done by banking institutions in other towns and many Beresford retailers secure financing out of Beresford. It is perceived by those involved in agriculture in and around Beresford that the present Beresford banking institutions are not interested in making agricultural loans. As a result, people are taking their banking business to other towns. Local merchants have suffered because people patron the shops and markets of other communities when they travel to do their banking. The Banking Commission's finding of need for an additional banking institution was, therefore, not clearly erroneous. *Cf. In re Application of Southern Hills Bank of Edgemont,* 339 N.W.2d 310, 312–14 (S.D.1983) (similar circumstances justified granting application to move main bank office). We affirm the Banking Commission on this issue.

## III.

The Banking Commission passes upon every application to establish a branch bank. SDCL 51–16–15.[5] To assist the Banking Commission, the Director of the .

---

4. 12 U.S.C.S. § 1464(c)(1)(R) (1989) limits the aggregate amount of commercial, corporate, business and agricultural loans to 10% of assets for savings and loan associations and savings banks.

5. Transferred to SDCL 51A–2–16 (1990).

Division of Banking (Director) investigates the application and submits a report to the Banking Commission. SDCL 51–17–15.[6] The Director must examine the application under the following criteria:

(a) The reputation, character, experience and financial standing of the applicant and its directors and shareholders;

(b) The need of the community for an additional banking facility;

(c) The ability of the community to support the additional banking facility;

(d) The adequacy of the capital of the proposed banking facility; and,

(e) Other factors which the Director deems relevant.

■ Subsequent to the administrative hearing in this case, the Director submitted his report pursuant to SDCL 51–17–15. After reviewing the report, First Savings Bank made a timely motion for continuance of the hearing and requested permission to respond to the report. The motion was denied by the Division of Banking. First Savings Bank contends they were thereby denied due process of law.

■ SDCL 1–26–18 provides:

Opportunity shall be afforded all parties to respond and present evidence on issues of fact and argument on issues of law or policy. A party to a contested case proceeding may appear in person or by counsel, or both, may be present during the giving of all evidence, may have reasonable opportunity to inspect all documentary evidence, may examine and cross-examine witnesses, may present evidence in support of his interest, and may have subpoenas issued to compel attendance of witnesses and production of evidence in his behalf.

The adjudicative hearing held in this case was a "contested case" within the meaning of SDCL 1–26–18. *See Valley State Bank of Canton v. Farmers State Bank of Canton*, 213 N.W.2d 459, 463 (S.D.1973). Parties to a contested case proceeding are enti-

tled to due process of law. *In re Application of Union Carbide Corp.*, 308 N.W.2d 753, 758 (S.D.1981); *Valley State Bank*, 213 N.W.2d at 463.

While the report submitted by the Director concerns the pertinent issues of the application, it appears there was no new evidence obtained by the Director on those issues. Indeed, as First Savings Bank argues in its brief, the Director's report is completely devoid of any information not presented at the hearing. As a matter of fact it appears to be based upon the evidence produced at the hearing. Consequently, although First Savings Bank was not afforded an opportunity to respond directly to the Director's report, First Savings Bank had a full opportunity to present evidence on all issues of fact and argument on all issues of law involved in the application. Therefore, First Savings Bank was not prejudiced and was afforded due process of law under SDCL 1–26–18.

## IV.

■ Because the report submitted by the Director of the Division of Banking failed to contain any information which was not presented at the hearing, First Savings Bank argues the Director failed to investigate and prepare a report pursuant to SDCL 51–17–15. SDCL 51–17–15 provides in pertinent part:

Within ninety days of the receipt of the application required in [SDCL 51–17–12,[7]] unless the commission orders that a longer time is necessary, the director shall investigate and make a report of ...

the criteria we have previously outlined. SDCL 51–17–16 [8] provides:

Within one hundred eighty days after filing of an application, the commission shall consider the director's findings and recommendations and all other available relevant information and shall in its discretion approve or disapprove the application, which action shall be subject to appeal pursuant to chapter 1–26.

---

6. Transferred to SDCL 51A–3–9 (1990).

7. Transferred to SDCL 51A–3–7 (1990).

8. Transferred to SDCL 51A–3–11 (1990).

Prior to 1981, S.D. Laws ch. 346, § 23, the Director was permitted 180 days to investigate and report upon the application, and prior to 1988, S.D. Laws ch. 377, § 67, the Banking Commission was permitted one year to approve or disapprove an application.

 The attorney general addressed this issue in Official Opinion No. 75–76. The attorney general noted our holding in *Valley State Bank,* 213 N.W.2d 459 that an opposed application for a bank charter is a "contested case," and therefore, the provisions of the administrative procedure act, SDCL ch. 1–26 are applicable. Under such circumstances, the phrase "required by law" found in SDCL 1–26–1(2) includes the constitutional requirements of fair play, due process, and agency rules, as well as the requirements of statutory law. Pursuant SDCL 1–26–21, "the record" in a contested case shall include "[a]ll staff memoranda or data submitted to the hearing officer or members of the agency in connection with their consideration of the case." Given the constitutional requirements of SDCL 1–26–1(2) and the prescription for an administrative record under SDCL 1–26–21, the attorney general was of the opinion that the Director's report be completed and submitted to the Commission before any hearing. The attorney general noted that because the Director has 180 days to make his investigation, there should be little information received at the hearing that the Director has not uncovered.

 Opinions of the attorney general construing statutes are entitled to weight in gleaning the legislature's intention. *In re Certification of a Question of Law,* 402 N.W.2d 340, 343 (S.D.1987); *Simpson v. Tobin,* 367 N.W.2d 757, 763 (S.D.1985); *Tulare Indep. School Dist. No. 36 v. Crandon School Dist. No. 17,* 47 S.D. 391, 395, 199 N.W. 451, 452 (1924). We tend to agree with the attorney general's opinion that SDCL 51–17–15 and –16 suggest the Director's report be completed before any hearing. However, neither statute, nor any other in chapter 51–17 dictates that the Director's report be submitted prior to any hearing. Indeed, nothing in SDCL 51–17–15 requires the Director to make his investigation *independent* of any hearing held on the application. In the instant case, where extensive testimony was taken at a public hearing with full assistance of counsel, requiring the Director to duplicate this effort would serve no meaningful purpose. Under the facts of this case, the concerns which support the attorney general's opinion have been met. Because the Director's report did not contain any information not presented at the hearing, First Savings Bank was afforded an opportunity to present evidence on all issues of fact involved, as due process requires. In addition, the Director's report was made part of the record in this case as required by SDCL 1–26–21. Consequently, the considerations which supported the attorney general's opinion have been satisfied, and to require duplicative and purposeless efforts on the part of the Director would foster only delay and expense.

We affirm.

MILLER, C.J., HENDERSON and SABERS, JJ., and MORGAN, Retired Justice, concur.

HERTZ, Circuit Judge, acting as a Supreme Court Justice, not having been a member of the court at the time this case was considered, did not participate.